

FILED
FEB 2 6 2019
CLERK, U.S. DISTRICT COURT
RICHMOND, VA

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

UNITED STATES OF AMERICA,

v.                                    Criminal No. 3:18-cr-117

ISIDORO GONZALEZ-FERRETIZ,

     Defendant.

## MEMORANDUM OPINION

This matter is before the Court on DEFENDANT'S MOTION TO DISMISS THE INDICTMENT (ECF No. 16) (the "Motion"). For the following reasons, this motion was denied by an ORDER entered January 23, 2019 (ECF No. 21).

### BACKGROUND

**I.   Procedural Context**

Isidoro Gonzalez-Ferretiz ("Gonzalez-Ferretiz") was charged in a one-count indictment with illegal reentry pursuant to 8 U.S.C. § 1326(a). ECF No. 3. On November 27, 2018, Gonzalez-Ferretiz filed DEFENDANT'S MOTION TO DISMISS THE INDICTMENT (ECF No. 16) (the "Motion").[1] The Government filed a brief (ECF No. 17) in opposition to the Motion. No reply brief was filed by Gonzalez-

---

[1] The Defendant initially filed his Motion on November 15, 2018 (ECF No. 13). Because the Motion was filed late, the Defendant sought leave to file out of time (ECF No. 14); and that request was granted on November 20 (ECF No. 15).

Ferretiz. On January 22, 2019, the Court received evidence and heard oral argument on the Motion.

## II. Factual Background

Gonzalez-Ferretiz is a Mexican citizen. ECF No. 17 at 1. He came to the United States illegally sometime before July 2008, when he was encountered by Immigration and Customs Enforcement ("ICE") officials in Pennsylvania. Id. He was granted voluntary departure[2] to Mexico, and was removed to Mexico on August 5, 2008. Id. He then reentered the United States on some date before July 23, 2012. On that date, he gave a sworn statement (written in English) to immigration officials while in state custody in Pennsylvania.[3] See Gov't Ex. 1.

Then, on June 2, 2014, Gonzalez-Ferretiz was convicted in Pennsylvania of "Theft from a Motor Vehicle" and received a sentence of up to 23 months in prison, which appears to be time served as of June 2, 2014. ECF No. 17 at 1; Gov't Ex. 2; Def.'s Ex. 1. Following that conviction, Gonzalez-Ferretiz was served with a "Notice of Intent to Issue a Final Administrative Removal Order," or Form I-851 (hereinafter, the "I-851"), advising him

---

[2] At the evidentiary hearing, there was some dispute raised about the 2008 removal. Counsel for Gonzalez-Ferretiz called the 2008 removal "voluntary return," rather than "voluntary departure." Because the resolution of the Motion does not turn on the meaning of those terms, it is unnecessary to resolve the difference between the two terms.

[3] It is unclear why Gonzalez-Ferretiz was in custody in 2012.

2

that, because of the conviction for an "aggravated felony" under 8 U.S.C. § 1101(a)(43)(G), he was a deportable alien. ECF No. 17 at 2; Gov't Ex. 3; ECF No. 16 at 1-2. On the continuation page attached to the I-851 form, Gonzalez-Ferretiz was informed of the specific conviction that served as the basis for his removal; to wit: "Theft From a Motor Vehicle, in violation of Title 18 Section 3934 Subsection A of the Pennsylvania Criminal Code." Gov't Ex. 3.

Like all I-851 forms, the one served on Gonzalez-Ferretiz contained a "Certificate of Service." Gov't Ex. 3. This "Certificate of Service" reports that it had been served on Gonzalez-Ferretiz "in person" on June 3, 2014; and it recites that it had been "explained and/or served" on Gonzalez-Ferretiz in English. Id. Gonzalez-Ferretiz acknowledged the service and explanation by affixing his signature. Id. Further down on the same page of the I-851 form, Gonzalez-Ferretiz selected a check-box that stated: "I Do Not Wish to Contest and/or to Request Withholding of Removal." Id. He also selected a check-box that stated:

> I admit the allegations and charge in this Notice of Intent. I admit that I am deportable and acknowledge that I am not eligible for any form of relief from removal. I waive my right to rebut and contest the above charges. I do not wish to request withholding or deferral of removal. I wish to be removed to [Mexico].

3

Id. Lastly, he selected a check-box that stated: "I understand that I have the right to remain in the United States for 14 calendar days in order to apply for judicial review. I do not wish this opportunity. I waive this right."[4] Id. After making these selections, Gonzalez-Ferretiz once again signed the I-851 form. Id. Deportation Officer Matt Garrison signed below Gonzalez-Ferretiz's signature as a witness. Id.

At the evidentiary hearing, Officer Garrison and Deportation Officer Richard Tine explained the process by which I-851 forms are served on an alien. They both testified that, if an alien indicates that he or she does not speak or understand English, the alien is provided the I-851 form in his or her native language. This is accomplished either by bringing into the interview a native-speaking immigration official to explain the document to the alien, or by connecting to the so-called "language line," which provides around-the-clock translation services for immigration officials. If the "language line" is called, the I-

---

[4] The I-851 form also included a half-page explanation (in English) of Gonzalez-Ferretiz's "Rights and Responsibilities," including his right to have an attorney in the immigration proceedings and his right to challenge his removal. See Gov't Ex. 3 at 1. Additionally, on the page where Gonzalez-Ferretiz selected that he did not wish to contest his removal, there was a check-box that stated "I Wish to Contest and/or to Request Withholding of Removal," and listed several grounds upon which Gonzalez-Ferretiz could make such a challenge. Id. at 2. Gonzalez-Ferretiz did not select that option, but rather chose not to challenge his deportation.

851 form is read to the alien in his native language. Providing those translations is standard ICE practice, and Officer Garrison testified that, because no translation was provided in this case, Gonzalez-Ferretiz would have advised that he spoke and understood English. At the evidentiary hearing in this case, counsel for Gonzalez-Ferretiz represented that Gonzalez-Ferretiz spoke and understood English, but was using an interpreter in these proceedings because of the nature of the proceedings.

Based on the state conviction in Pennsylvania and waivers of his rights to challenge the removal, a Final Administrative Removal Order ("Final Order") was issued on June 3, 2014.[5] The Final Order found that Gonzalez-Ferretiz had a final conviction for an "aggravated felony" under 8 U.S.C. § 1101(a)(43)(G) and that he was removable. Gov't Ex. 4; ECF No. 17 at 2; ECF No. 16-1 at 1. Pursuant to the Final Order, Gonzalez-Ferretiz was removed from the United States on June 19, 2014. ECF No. 17 at 2.

Sometime thereafter, Gonzalez-Ferretiz again reentered the United States illegally, was discovered by ICE officials, and came into ICE custody pursuant to a "Reinstatement of the Removal Order of June 19, 2014."[6] ECF No. 17 at 3. On February 20, 2018,

---

[5] At the evidentiary hearing, Officer Tine explained that the Final Order is typically signed on the same day that the alien is served with the I-851 form where, as here, the alien has indicated that he does not wish to challenge his deportability.

[6] The AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT (ECF No. 1) avers

Gonzalez-Ferretiz received a copy of the Notice of Intent/Decision to Reinstate Removal Order, and pursuant to the 2014 Final Order, he was removed from the United States on March 7, 2018. Id.; see also Aff. ¶ 17 (ECF No. 1). Thereafter, Gonzalez-Ferretiz reentered the United States illegally again.[7] ECF No. 17 at 3. He was indicted on the illegal reentry charge on September 19, 2018 (ECF No. 3) and was arrested pursuant to the indictment on October 23, 2018. ECF No. 5; ECF No. 17 at 3.

Officer Tine testified that he interviewed Gonzalez-Ferretiz in early 2018; that they spoke in English; and that Gonzalez-Ferretiz gave no indication that he did not speak and understand English. Officer Tine was satisfied that Gonzalez-Ferretiz understood all that was said to him.

---

that, on December 25, 2017, Gonzalez-Ferretiz "was encountered by the [ICE] Lorton Command Center following GONZALEZ-FERRETIZ's arrest in Virginia for DUI 1st in violation of V.A. Code § 18.2-266 in Caroline County Virginia." Aff. at ¶ 14. He was taken into ICE custody in Richmond on February 16, 2018, id. ¶ 15, and, on February 20, 2018, he was served with the order to reinstate the prior removal order. Id. ¶ 16.

[7] While the exact details of this time period are unclear, the AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT (ECF No. 1) states: "On September 11, 2018, GONZALEZ-FERRETIZ was encountered in Laguna Niguel, California, following GONZALEZ-FERRETIZ's arrest in Caroline County for probation violation. GONZALEZ-FERRETIZ is currently in state custody at the Pamunkey Regional Jail. An ICE detainer I-247 was issued to the Pamunkey Regional Jail." Aff. ¶ 19.

**DISCUSSION**

**A. Framework for Collateral Challenges to Prior Deportation Orders**

Gonzalez-Ferretiz has been charged with illegal reentry under 8 U.S.C. § 1326(a). To prove that charge, one of the elements that the Government will have to establish is that Gonzalez-Ferretiz "has been denied admission, excluded, deported, or removed" and thereafter reentered the United States without, inter alia, the permission of the United States Attorney General. 8 U.S.C. § 1326(a). In United States v. Mendoza-Lopez, 481 U.S. 828 (1987), the Supreme Court of the United States held that, in illegal reentry cases, an alien has a due process right to challenge the underlying deportation order. Thereafter, Congress codified the due process requirements in 8 U.S.C. § 1326(d). See United States v. Moreno-Tapia, 848 F.3d 162, 165-66, 169 (4th Cir. 2017). At bottom, Section 1326(d) "is concerned with failures of due process in an immigration proceeding that would make it fundamentally unfair to rely on a removal order coming out of that proceeding." Id. at 169. The statute focuses the inquiry on whether there were "procedural defect[s] in an immigration proceeding [that] insulate[] the resulting order from judicial review. . . ." Id.

Section 1326(d) sets out three elements that an alien must prove to challenge the underlying deportation order. In full, that

subsection reads:

> In a criminal proceeding under this section [8 U.S.C. § 1326], an alien may not challenge the validity of the deportation order described in subsection (a)(1) or subsection (b) unless the alien demonstrates that—
>
>> (1) the alien exhausted any administrative remedies that may have been available to seek relief against the order;
>>
>> (2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and
>>
>> (3) the entry of the order was fundamentally unfair.

8 U.S.C. § 1326(d) (emphasis added). To satisfy Section 1326(d)(3), the Fourth Circuit has held that an alien "must show that (1) his due process rights were violated by defects in his underlying deportation proceeding, and (2) he suffered prejudice as a result of the defects." United States v. El Shami, 434 F.3d 659, 664 (4th Cir. 2005) (quoting United States v. Wilson, 316 F.3d 506, 510 (4th Cir. 2003)). To show prejudice, the alien must show that, "but for the errors complained of, there was a reasonable probability that he would not have been deported." Id. at 665. An alien may be excused from meeting certain Section 1326(d) requirements if the underlying deportation proceeding was procedurally flawed. See Moreno-Tapia, 848 F.3d at 169; United States v. Lopez-Collazo, 824 F.3d 453, 459-62 (4th Cir. 2016) (due

process violation where alien was served the I-851 form in language he did not understand); El Shami, 434 F.3d at 662-64 (excusal from Sections 1326(d)(1) and (d)(2) where alien did not receive notice of his immigration proceeding).

It is evident from the statutory text that the defendant must satisfy (or be excused from) all three elements of Section 1326(d) to succeed in a collateral challenge. And, the Fourth Circuit has so held. El Shami, 434 F.3d at 663. The burden of proof to establish that these elements have been satisfied "rests with the defendant." United States v. Galcia, No. 1:15cr59, 2016 WL 4054926, *2 (E.D. Va. July 26, 2016). And, that burden must be met by "a preponderance of the evidence." Id. (citing several cases). If the alien meets his burden, "the illegal reentry charge must be dismissed as a matter of law." El Shami, 434 F.3d at 663 (citing Wilson).

The text of 8 U.S.C. § 1326 and Fourth Circuit precedent establishes that the alien may only collaterally challenge prior deportation orders in a Section 1326(a) prosecution by following the requirements of Section 1326(d). In Moreno-Tapia, the Fourth Circuit held that, "[u]nder [§ 1326(d)], in order to bring a successful collateral attack against a removal order, the defendant in an illegal reentry prosecution must meet [the] three requirements [listed in the statute]." 848 F.3d at 166. In a

9

well-reasoned recent decision, Judge Ellis confirmed this view in

holding that:

> Congress has made clear that an alien who
> demonstrates these three prerequisites has
> been denied meaningful judicial review in the
> initial removal proceeding and thus has the
> right to attack collaterally the prior removal
> order and related proceeding under § 1326(d).
> Importantly, the three prerequisites are
> listed in the conjunctive, and thus, as the
> Fourth Circuit has recognized, the defendant
> must satisfy all three prerequisites in order
> to be able to challenge collaterally the
> underlying removal order. United States v. El
> Shami, 434 F.3d 659, 663 (4th Cir. 2005).
> Therefore, defendant here may not challenge
> the June 2007 Removal Order unless he meets
> all three § 1326(d) requirements. But if
> defendant meets all three requirements, the
> Indictment's illegal re-entry charge under §
> 1326(a) and (b)(1) must be dismissed. Id.

United States v. Romero-Caceres, No. 1:18-cr-354, 2018 WL 6059381,

at *3 (E.D. Va. Nov. 19, 2018) (emphasis added); see also id. at

*5 n.7. That reasoning applies fully here.[8]

The Court recognizes that language in Moreno-Tapia and a

recent opinion by Judge Brinkema suggest that collateral

---

[8] Like many courts facing Section 1326 prosecutions in the wake
of Pereira v. Sessions, 138 S. Ct. 2105 (2018), Judge Ellis
analyzed (and rejected) the defendant's argument that the original
immigration proceeding was void for lack of jurisdiction. 2018 WL
6059381, at *5-9. His opinion, however, analyzed this argument
only after "assuming, arguendo that defendant could clear the
hurdle imposed by the three § 1326(d) requirements," clearly
requiring a satisfaction of the Section 1326(d) requirements
before the jurisdictional argument could even be entertained. Id.
at *5.

challenges outside of Section 1326(d) might be possible. See Moreno-Tapia, 848 F.3d at 170 ("We need not decide today. . .whether due process might in some circumstances demand that an immigration order based on an unconstitutional conviction be subject to collateral attack."); United States v. Rivera Lopez, No. 1:18-cr-381(LMB), 2018 WL 6834363, at *3 (E.D. Va. Dec. 28, 2018) (it "remains an open question" whether "due process requires that a defendant be given an opportunity to bring a collateral attack beyond the requirements and limitations of § 1326(d)") (emphasis in original).

At this juncture, however, given the clear language of the statute and the fact that Moreno-Tapia, Lopez-Collazo, and El Shami all perform the collateral attack analysis solely within the Section 1326(d) framework, the cogent, well-reasoned approach taken in Romero-Caceres correctly sets out the proper framework for resolving challenges such as the one made here by Gonzalez-Ferretiz. And, so the Court holds that an alien may only challenge his underlying deportation order by satisfying the three requirements of Section 1326(d). Allowing collateral challenges in Section 1326 prosecutions outside of Section 1326(d) flies in the face of the clear statutory text and Congress' intent.[9]

---

[9] The "Section-by-Section" analysis of the legislation that added Section 1326(d) states that the new subsection "allow[s] a court in a criminal proceeding against a deported alien who re-enters

Accordingly, if the Court determines that Gonzalez-Ferretiz has failed to satisfy any of the three elements of Section 1326(d), his collateral challenge must be rejected, and his motion denied.[10]

## B. Analysis

Before assessing whether Gonzelez-Ferretiz has met his burden under Section 1326(d), it is appropriate to resolve Gonzalez-Ferretiz's contention that, wholly apart from the requirements of Section 1326(d), an alien may collaterally attack the removal order by showing that his prior removal is void for lack of jurisdiction. As set out below, Gonzalez-Ferretiz argues that his 2014 removal was void for lack of jurisdiction because he was not convicted of an aggravated felony. After analyzing this argument, the Court will assess whether Gonzalez-Ferretiz has met his burden under Section 1326(d).

### a. Jurisdiction

Gonzalez-Ferretiz first argues that he can challenge his 2014 removal outside of the Section 1326(d) requirements. See generally

---

the U.S. to re-examine the underlying deportation order only if the alien" satisfies the three requirements of Section 1326(d). 140 Cong. Rec. S.5558-01 (daily ed. May 11, 1994), 1994 WL 181390, at *S5571 (emphasis added). "This language taken from United States v. Mendoza-Lopez, 481 U.S. 828 (1987), is intended to ensure that minimum due process was followed in the original deportation proceeding while preventing wholesale, time consuming attacks on underlying deportation orders." Id.

[10] Because it has been raised, the Court will briefly address Gonzalez-Ferretiz's jurisdictional argument too.

ECF No. 16 at 3-15. In sum, he argues that his conviction under the Pennsylvania theft statute was not an "aggravated felony" and that, therefore, he was not amenable to removal on the ground charged. Id. As Gonzalez-Ferretiz sees it, the immigration official made an error of law in 2014 (there was no "aggravated felony"), and, as a result, the "officer who entered [the removal order] lacked subject matter jurisdiction to enter the order at all." Id. at 3. Thus, the argument goes, the underlying deportation is void and there is no need for him to satisfy the Section 1326(d) factors.

The nub of Gonzalez-Ferretiz's argument here is that a legal error by immigration officials in 2014 means that those immigration officials never had jurisdiction over his case, and that his 2014 removal is void. In his briefing, Gonzalez-Ferretiz has not cited a single case that supports this claim in a Section 1326(a) prosecution. Id. at 3-6. That is, he has not cited any authority involving a prosecution under 8 U.S.C. § 1326(a) whereby a defendant is permitted to challenge the classification of the predicate offense underlying his removal other than pursuant to the requirements of Section 1326(d). Instead, Gonzalez-Ferretiz cites several appellate decisions wherein courts have found that the Board of Immigration Appeals lacked jurisdiction to order an alien's removal where an immigration judge had not ordered

removal. See Rhodes-Bradford v. Keisler, 507 F.3d 77 (2d Cir. 2007); James v. Gonzales, 464 F.3d 505 (5th Cir. 2006); Noriega-Lopez v. Ashcroft, 335 F.3d 874 (9th Cir. 2003). Those decisions did not arise in the context of a Section 1326 prosecution.

Moreover, in the Section 1326 context, it appears that courts address arguments about whether a predicate offense was an "aggravated felony" under the Section 1326(d) requirements. See, e.g., United States v. Martinez-Hernandez, 912 F.3d 1207, 1211-15 (9th Cir. 2019) (analyzing argument under Section 1326(d)(3)); United States v. Almanza-Vigil, 912 F.3d 1310, 1316 (10th Cir. 2019) (same). Thus, the Court does not find the cases cited by Gonzalez-Ferretiz in his briefing to direct the inquiry here.

At the evidentiary hearing, counsel for Gonzalez-Ferretiz stated that cases decided in the wake of Pereira v. Sessions, 138 S. Ct. 2105 (2018), support his jurisdictional attack. In Pereira, the Supreme Court held that "[a] putative notice to appear that fails to designate the specific time or place of the noncitizen's removal proceedings is not a 'notice to appear under section 1229(a),' and so does not trigger the stop-time rule." Id. at 2113-14. Since Pereira, in Section 1326 prosecutions, some courts have been asked to determine whether Pereira invalidates underlying deportations that were begun[11] by "notices to appear"

_____

[11] In certain immigration proceedings (not at issue here),

14

that were defective under Pereira because they did not contain the time or place of the immigration proceeding. See Romero-Caceres, 2018 WL 6059381, at *5 n.7 (citing cases). That is, the defendants in those cases argue that they may collaterally attack their prior deportations because "the immigration court. . . [lacked] jurisdiction to order" the alien's removal due to the defective "notice to appear." Id. at 5 & n.7.

To decide this case, the Court need not wade into the merits of these decisions and whether Pereira does impact the jurisdiction of the immigration court because the validity of a "notice to appear" is not at issue here. Gonzalez-Ferretiz was removed pursuant to 8 U.S.C. § 1228 ("Expedited removal of aliens convicted of committing aggravated felonies"), where proceedings "commence upon personal service of the Notice of Intent upon the alien"; the "Notice of Intent shall constitute the charging document." 8 CFR § 238.1(b)(2)(i); see also 8 C.F.R. § 1003.14(a); Lopez-Collazo, 824 F.3d at 456-58 (describing the expedited

---

procedures before the immigration judge begin upon the filing of a "notice to appear." See Romero-Caceres, 2018 WL 6059381, at *6-9 (describing how such procedures operate). Because the "notice to appear" serves as a charging document, and the regulations state that "[j]urisdiction vests, and proceedings before an Immigration Judge commence, when a charging document is filed with the Immigration Court by the Service," 8 C.F.R. § 1003.14(a) (emphasis added), the argument is that a faulty "notice to appear" means that jurisdiction never properly vested with the immigration court. See Romero-Caceres, 2018 WL 6059381, at *6-9.

removal procedures). Whatever _Pereira_'s impact, it is clear that it did not have anything to say about the "Notice of Intent" at issue in this case. Rather, Gonzalez-Ferretiz is attempting to extend the line of cases post-_Pereira_ dealing with the "notice to appear" to a new context.[12]

The Court does not find Gonzalez-Ferretiz's jurisdictional argument persuasive. At bottom, he disagrees with the legal conclusion that immigration officials made in 2014 about his Pennsylvania conviction. He has not cited any authority that such an error may be raised in the way he proposes (i.e. outside of the requirements of Section 1326(d)) in a Section 1326 prosecution. And, as discussed above, the post-_Pereira_ cases arise in a different context and are not controlling on this issue. Accordingly, the Court rejects Gonzalez-Ferretiz's attempt to skirt the requirements of Section 1326(d) by raising this jurisdictional argument. Such an argument must be raised within the structure of Section 1326(d), likely under Section 1326(d)(3).

---

[12] The Court also notes that in a recent unpublished decision, the Fourth Circuit declined to give a broad reading to _Pereira_. See United States v. Perez-Arellano, No. 18-4301, 2018 WL 6617703, at *3 (4th Cir. Dec. 17, 2018) (unpublished) (per curium) ("Simply put, _Pereira_ did not address the question of an immigration judge's jurisdiction to rule on an alien's removability, and it certainly does not plainly undermine the jurisdiction of the 2004 removal proceeding."). See also Leonard v. Whitaker, 746 Fed. Appx. 269, 269-70 (4th Cir. Dec. 31, 2018) (unpublished) (per curium).

16

See, e.g., Martinez-Hernandez, 912 F.3d at 1211-15.

**b. Section 1326(d)**

Next, the Court considers whether Gonzalez-Ferretiz has satisfied the three elements of Section 1326(d) that control a collateral challenge to the 2014 removal. See Moreno-Tapia, 848 F.3d at 166; Romero-Caceres, 2018 WL 6059381, at *3. Gonzalez-Ferretiz's argument here is that he has satisfied (or is excused from satisfying) the Section 1326(d) factors, and therefore the indictment in this case must be dismissed. See generally ECF No. 16 at 15-20.

Gonzalez-Ferretiz has the burden to show that he has satisfied all three requirements of Section 1326(d) by a preponderance of the evidence. Galcia, 2016 WL 4054926, at *2. For the reasons set forth below, Gonzalez-Ferretiz has failed to establish compliance with (or excusal from) either Section 1326(d)(1) or Section (d)(2). Accordingly, Gonzalez-Ferretiz's collateral attack on the 2014 deportation order fails. Therefore, it is not necessary to reach the merits of his arguments under Section 1326(d)(3).

**(1) Exhaustion of Available Administrative Remedies**

It is uncontroverted that Gonzalez-Ferretiz never sought "any administrative remedies that may have been available to seek relief against the [2014 removal order]." 8 U.S.C. § 1326(d)(1);

17

see also ECF No. 17 at 5 n.1 (describing the steps that Gonzalez-Ferretiz could have taken to challenge his removal). Instead, the record proves, by a preponderance of the evidence, that Gonzalez-Ferretiz signed an I-851 form that expressly waived his right to review the 2014 removal order and consented to his removal. See, e.g., Gov't Ex. 3. Indeed, Gonzalez-Ferretiz does not argue that he satisfied the exhaustion requirement (nor could he). Instead, he argues that the waiver of the right to review reflected on the I-851 form that he signed was invalid.

The parties agree that the validity of Gonzalez-Ferretiz's waiver of his right to administrative review comes down to whether he spoke or understood English when he was served with, and given explanation of, the I-851 form and the Final Order in June 2014. An invalid waiver could excuse his failure to exhaust. See United States v. Ortiz, 488 Fed. Appx. 717, 718 (4th Cir. 2012) (unpublished); United States v. Sosa, 387 F.3d 131, 136 (2d Cir. 2004); cf. Lopez-Collazo, 824 F.3d at 459 (4th Cir. 2016) (assuming without deciding that waiver on an I-851 form was invalid where defendant did not sufficiently read or understand English). [13] "If, however, [Gonzalez-Ferretiz] knowingly and

---

[13] In Lopez-Collazo, the District Court concluded that the defendant "understood almost no English" and that it was "patently clear that Lopez-Collazo in 2007 did not read or understand English to an extent sufficient to enable him to comprehend the NOI or the Waiver form. . .or to make a knowing and informed

voluntarily waive[d] his right to appeal an order of deportation, then his failure to exhaust administrative remedies. . .bar[s] [his] collateral attack on the order in [the instant] illegal reentry prosecution under § 1326(d)." United States v. Lopez, 667 Fed. Appx. 837, 838 (4th Cir. 2016) (unpublished) (per curium).

The record establishes quite clearly that Gonzalez-Ferretiz sufficiently understood and spoke English at the time he was provided the I-851 form in June 2014. First, Gonzalez-Ferretiz does not contend that, at the time, he did not understand English. Instead, he argues that the I-851 form was not served in his "native language" of Spanish. ECF No. 16 at 16-17. That sleight of hand is not enough. The fact that Spanish is Gonzalez-Ferretiz's native language is not at all dispositive. What matters is whether he also "understands" English.[14]

Second, the Government proved that Gonzalez-Ferretiz gave a sworn, written statement in July 2012 in English. See Gov't Ex. 1. That fact shows that, two years before being served the I-851 form at issue, Gonzalez-Ferretiz understood English. Third, two

_____

decision on the basis of forms that he could not read." Lopez-Collazo, 824 F.3d at 459 (internal quotations omitted).

[14] Immigration officials must "provide the alien with a written translation of the Notice of Intent or explain the contents of the Notice of Intent to the alien in the alien's native language or in a language that the alien understands." 8 C.F.R. § 238.1(b)(2)(v) (emphasis added); Lopez-Collazo, 824 F.3d at 462 (quoting this language).

immigration officials, Officers Tine and Garrison, testified that when serving I-851 forms, if an alien indicated that he did not understand English, interpretive services would have been provided and the I-851 form would have been read to the alien in a language that he understood. There is no record evidence to the contrary. Officer Garrison witnessed Gonzalez-Ferretiz's signing of the I-851 form (and affirmed this fact with his signature). While Garrison did not remember Gonzalez-Ferretiz specifically, he testified that the fact that the I-851 form was explained in English shows that Gonzalez-Ferretiz would have demonstrated an understanding of English at the time, or, under the standard practice, the form would not have been read in English and an interpreter would have been used.

Fourth, Officer Tine interviewed Gonzalez-Ferretiz in person in February 2018. At that time, Officer Tine spoke with Gonzalez-Ferretiz in English and Gonzalez-Ferretiz gave no indication that he did not speak or understand English. Finally, counsel for Gonzalez-Ferretiz—when asked why an interpreter was present at the evidentiary hearing—represented that Gonzalez-Ferretiz spoke conversational English, and that an interpreter was present because legal terminology was more complex.

Based on the record as a whole, the Court finds that Gonzalez-Ferretiz did speak and understand English when he was served the

I-851 form and Final Order in June 2014. He also understood that part of the form that contains the written waiver of his right to challenge his deportation. Gonzalez-Ferretiz has offered no evidence to rebut this conclusion. His waiver of these rights is therefore valid and does not excuse his failure to exhaust administrative remedies. Accordingly, the Court finds that Gonzalez-Ferretiz has failed to establish that he has satisfied, (or is excused from), the requirement of Section 1326(d)(1).

### (2) Deprivation of an Opportunity for Judicial Review

It is uncontroverted that Gonzalez-Ferretiz did not seek judicial review of the 2014 deportation order until now. The I-851 form informed him of his right to remain in the United States for 14 calendar days to "petition for review of this order to the appropriate U.S. Circuit Court of Appeals as provided for in section 242 of the Act, 8 U.S.C. 1252." Gov't Ex. 1 at 1.

Instead of availing himself of this right, Gonzalez-Ferretiz waived it by selecting a check-box that read: "I understand that I have the right to remain in the United States for 14 calendar days in order to apply for judicial review. I do not wish this opportunity. I waive this right." Gov't Ex. 3 at 2 (emphasis added). Based on the record evidence, the Court finds that this waiver was valid because Gonzalez-Ferretiz understood English at the time he signed the waiver. Because he validly waived judicial

21

review, Gonzalez-Ferretiz cannot now claim that the 2014 deportation proceeding "improperly deprived [him] of the opportunity for judicial review." 8 U.S.C. § 1326(d)(2); see also Lopez-Collazo, 824 F.3d at 459.

Undeterred by this clear waiver of his right to judicial review, Gonzalez-Ferretiz argues that the Fourth Circuit's decision in Etienne v. Lynch, 813 F.3d 135 (4th Cir. 2015), excuses his failure to satisfy the judicial review prong of Section 1326(d). He argues that Etienne held that the I-851 form and the administrative removal statute "do not provide an alien an 'opportunity to challenge the legal basis of his removal.'" ECF No. 16 at 17 (quoting Etienne, 813 F.3d at 138). Therefore, says Gonzalez-Ferretiz, "an alien's failure to appeal a legal determination underlying an administrative removal order cannot be held against him." ECF No. 16 at 17. Accordingly, the argument goes, Gonzalez-Ferretiz is "excused from appealing the legal issue of whether his forgery [sic] conviction constituted an aggravated felony." Id. at 18.

When asked specifically at the evidentiary hearing where, in Etienne, the Fourth Circuit had established that principle or made that holding, counsel for Gonzalez-Ferretiz highlighted on the Court's copy of the Etienne decision the following language:

> As we explain below, we join the Fifth Circuit
> in holding that, in expedited removal

22

> proceedings, an alien has no opportunity to
> challenge the legal basis of his removal. The
> INA's administrative—exhaustion requirement
> therefore does not deprive us of jurisdiction
> to consider such a challenge in the first
> instance on appeal.

813 F.3d at 138. While it is true that both this case and Etienne deal with the I-851 form and a removal based on an "aggravated felony" under 8 U.S.C. § 1101(a)(43), the language above illustrates a key difference overlooked by Gonzalez-Ferretiz. In Etienne, the Court of Appeals was deciding whether it had jurisdiction to review Etienne's expedited removal order under 8 U.S.C. § 1252(d)(1), which requires that an alien "exhaust[] all administrative remedies available to the alien as of right" before the Court of Appeals has jurisdiction. Etienne, 813 F.3d at 138. The Court of Appeals concluded that the expedited removal proceedings and the I-851 form did not provide a way for aliens like Etienne to challenge the legal basis for their removal. Id. Because there was no way to raise such a challenge, Etienne "was not required to raise his legal challenge to removal in order to meet the exhaustion requirement," and the Court thus had jurisdiction to proceed. Id. at 142.

However, Etienne does not address collateral attacks under 8 U.S.C. § 1326(d).[15] Indeed, it does not even cite to Section 1326.

---

[15] Though not raised by the parties, the Court has found one district court case expanding the reasoning of Etienne to the

23

Rather, that case dealt with the Court of Appeals' jurisdiction to hear an appeal of the alien's expedited deportation <u>at the time he was being deported</u>. That is not what this case is about. Moreover, here, Gonzalez-Ferretiz expressly and knowingly waived the right to judicial review. There is also another important factual difference between this case and <u>Etienne</u>: Etienne indicated during his removal proceedings that he wanted to challenge his removal. 813 F.3d at 137. Here, Gonzalez-Ferretiz waived that right and consented to deportation.

For the foregoing reasons, the Court does not find that <u>Etienne</u> controls its analysis here. Thus, contrary to Gonzalez-Ferretiz's argument, it does not somehow negate his express waiver of his right to judicial review. Because the Court concludes that Gonzalez-Ferretiz understood English at the time he was served

---

Section 1326(d) context. <u>United States v. Cazares-Rodriguez</u>, No. 3:17-cr-00327-GPC-1, 2017 WL 2212031 (S.D. Cal. May 19, 2017). There, the court held that <u>Etienne</u>'s reasoning that the I-851 does not permit a legal challenge of the aggravated felony determination "applies with equal force in the context of the § 1326(d) requirements." <u>Id.</u> at *5. The Defendant's waiver of his right to challenge his deportation was invalid where he did not know he could challenge his state conviction as not being an "aggravated felony." <u>Id.</u>

<u>Cazares-Rodriguez</u> supports the decision reached here because it confirms that <u>Etienne</u> was not about collateral attacks under Section 1326(d). <u>See Cazares-Rodriguez</u>, at *4 n.3. And, absent direction from the Court of Appeals on this issue, this Court will not follow an out-of-Circuit district court case that expands a Fourth Circuit precedent to new contexts.

the I-851 form and Final Order and that _Etienne_ does not apply, the Court finds that Gonzalez-Ferretiz validly waived his right to judicial review. Thus, he fails to establish that he has met 8 U.S.C. § 1326(d)(2).

### (3) Fundamental Unfairness

Since the Section 1326(d) requirements "are listed in the conjunctive. . .[Gonzalez-Ferretiz] must satisfy all three in order to prevail" on a collateral attack of his prior deportation order. _El Shami_, 434 F.3d at 663 (internal quotations omitted). Because the Court concludes that Gonzalez-Ferretiz has failed to meet either Section 1326(d)(1) or (d)(2), his collateral attack fails. It is thus not necessary to consider arguments raised under Section 1326(d)(3), that "the entry of the order was fundamentally unfair."

## CONCLUSION

For the foregoing reasons, DEFENDANT'S MOTION TO DISMISS THE INDICTMENT (ECF No. 16) was denied pursuant to the ORDER of January 23, 2019 (ECF No. 21).

It is so ORDERED.

/s/

Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: February 26, 2019

26