**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

UNITED STATES OF AMERICA    )
                                 )
**v.**                             )     Criminal Action No. 3:18cr117
ISIDORO GONZALEZ-FERRETIZ,  )
    Defendant.          )
                                 )

**MEMORANDUM OPINION**

This matter is before the Court on a Petition on Supervised Release (ECF No. 53) and on three separate motions seeking dismissal of the petition:

> (1) DEFENDANT'S MOTION TO DISMISS PETITION TO REVOKE SUPERVISED RELEASE UNDER DOUBLE JEOPARDY CLAUSE, (ECF No. 70);
>
> (2) DEFENDANT'S MOTION TO DECLARE CHAPTER SEVEN OF SENTENCING GUIDELINES ULTRA VIRES AND VOID, (ECF No. 69); and
>
> (3) DEFENDANT'S ALTERNATIVE MOTION TO LIMIT REVOCATION SENTENCE TO 3 MONTHS OR LESS, (ECF No. 68).

Gonzalez-Ferretiz's first motion argues that sanctioning him for his supervised release violation would run afoul of the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution because he has already been separately punished for each of his 8 U.S.C. § 1326 violations.

Gonzalez-Ferretiz's second motion argues that Chapter Seven of the United States Sentencing Guidelines is *ultra vires* and thus void, because the relevant provisions in those guidelines,

he argues, illicitly impose punishment for violations of
supervised release on the basis of factors that Congress forbade
the Sentencing Commission from considering. Hence, says
Gonzalez-Ferretiz, he cannot be punished under those provisions.

Gonzalez-Ferretiz's third motion argues in the alternative
that any term of imprisonment must, in aggregate with the
initial term, fall within the statutory maximum of 24 months
that applies to the underlying § 1326(a) offense.

For the reasons given below, these motions will be denied.

### BACKGROUND

The factual background of this matter is not in dispute.
In 2019, Isidoro Gonzalez-Ferretiz was convicted on a plea of
guilty of illegally reentering the United States in violation of
8 U.S.C. § 1326(a). He was sentenced to a 21-month term of
imprisonment and a 12-month term of supervised release. The
period of supervised release began on April 20, 2020 when
Gonzalez-Ferretiz was released from prison. He was deported on
May 4, 2020. On October 1, 2020, Gonzalez-Ferretiz was arrested
near Brownsville, Texas for allegedly reentering the United
States. On April 8, 2021, Gonzalez-Ferretiz was convicted in the
United States District Court for the Southern District of Texas
of illegally reentering the United States. He was sentenced to

2

30 months of imprisonment followed by two years of supervised release (ECF No. 64).

Gonzalez-Ferretiz is now back before this Court for violation of the terms of his supervised release, having been convicted of a federal crime. By the terms of his original sentence, Gonzalez-Ferretiz faces a prison term of up to one year.

## DISCUSSION

### I. The Motion to Dismiss on Double Jeopardy Grounds (ECF No. 70)

Gonzalez-Ferretiz's first motion asks the Court to dismiss the petition to revoke supervised release on double jeopardy grounds. He argues that, if he were to be sanctioned by this Court for violating the terms of his supervised release, he would be subject to three punishments for two offenses. He has already been sentenced in connection with each of his illegal reentry convictions under § 1326. A further sanction for his supervised release violation, he argues, must one way or the other be a second punishment for one of the two earlier offenses.

But as Gonzalez-Ferretiz acknowledges, there is controlling case law on this point. See Johnson v. United States, 529 U.S. 694, 700-01 (2000) ("Treating postrevocation sanctions as part of the penalty for the initial offense . . . avoids these difficulties [i.e., double jeopardy] . . . . We therefore

3

attribute postrevocation penalties to the original conviction."); <u>United States v. Haymond</u>, 588 U.S. ___, ___, 139 S.Ct. 2369, 2380 (2019) ("The defendant receives a term of supervised release thanks to his initial offense, and whether that release is later revoked or sustained, it constitutes a part of the final sentence for his crime.") (Gorsuch, J.) (plurality opinion); <u>United States v. Woodrup</u>, 86 F.3d 359 (4th Cir. 1996) ("Because the punishment imposed upon Woodrup for violating the terms of his supervised release is properly considered punishment for his previous offense . . . the punishment imposed for this latter offense is not barred by the Double Jeopardy Clause."). Thus, the settled law does not permit a ruling in favor of Gonzalez-Ferretiz.

Recognizing as much, Gonzalez-Ferretiz argues that the Supreme Court's recent decision in <u>United States v. Haymond</u> changes the rule set by <u>Johnson</u> and <u>Woodrup</u>. In <u>Haymond</u>, the defendant was sanctioned for his supervised release violation under a different part of § 3583 than is at issue here. Section 3583(k) governs sanctions for supervised release violations committed by convicted sex offenders; and that subsection dictates a mandatory minimum sanction of five years' imprisonment for any violation of supervised release in the form of the commission of one of an enumerated list of sex offenses. 18 U.S.C. § 3583(k). Gonzalez-Ferretiz faces sanctions under

4

§ 3583(e).  Both Justice Gorsuch's plurality opinion and Justice Breyer's concurring opinion turned on two features of the defendant's case that are not presented here: (1) application of subsection (k)'s mandatory minimum sentence, and (2) the application of subsection (k) being predicated on judicial factfinding under a preponderance standard. See Haymond, 588 U.S. at ___, 139 S.Ct. at 2382 (Gorsuch, J.) (plurality opinion) ("Unlike all those procedures [in § 2583(e)(3)], § 2583(k) alone requires a substantial increase in the minimum sentence to which a defendant may be exposed based only on judge-found facts under a preponderance standard. And . . . that offends the Fifth and Sixth Amendments' ancient protections."); id. at 2385-86 (Breyer, J., concurring) ("I would not transplant the Apprendi line of cases to the supervised release context . . . Nevertheless, I agree with the plurality that this specific provision of the supervised-release statute, § 3583(k), is unconstitutional."). Gonzalez-Ferretiz does not explain how the ruling in Haymond under subsection (k) would affect supervised release violation sanctions in a case such as this one, in which only subsection (e)'s discretionary provisions apply, and in which the predicate violation is a criminal conviction rather than a judge-found fact. See United States v. Ka, 982 F.3d 218, 222-23 (4th Cir. 2020) ("Notably, however, § 3583(e) 'does not contain any of the three features that, in combination,

5

render[ed] § 3583(k) unconstitutional.") (quoting United States v. Doka, 955 F.3d 290, 296) (2d Cir. 2020)).

Gonzalez-Ferretiz seeks to cast doubt on whether Justice Breyer's concurring opinion in Haymond is controlling, finding in Justice Gorsuch's opinion reasoning more conducive to his argument. But Fourth Circuit case law treats Justice Breyer's concurrence as controlling. United States v. Coston, 964 F.3d 289, 295 (4th Cir. 2020). And Justice Breyer's opinion is unambiguous on this point, stating that it "would not transplant the Apprendi line of cases to the supervised release context." 588 U.S. at ___, 139 S.Ct. at 2385 (2019) (Breyer, J., concurring). The conclusion that Haymond does not alter the status quo regarding double jeopardy claims under 18 U.S.C. § 3583(e) is further underscored by the Fourth Circuit's continuing adherence to its pre-Haymond rejection of double jeopardy claims such as this one. See, e.g., United States v. Harrison, 785 F.App'x. 175 (4th Cir. 2019) (unpublished).

Gonzalez-Ferretiz's final set of arguments fails for the same reason. He draws on case law outside the supervised release context to advance several distinct attacks on the permissibility of reimprisonment as a sanction for violation of the terms of supervised release. These arguments do not succeed.

6

Gonzalez-Ferretiz argues, first, that the Supreme Court's decisions in Dixon v. United States, 509 U.S. 688 (1993), is applicable here. Dixon, however, applied double jeopardy protections to contempt proceedings, and the argument that Dixon supports Gonzalez-Ferretiz's double jeopardy claim in the supervised release context is foreclosed by precedent. In United States v. Woodrup, 86 F.3d 359 (4th Cir. 1996), the Fourth Circuit explicitly addressed the argument that contempt cases like Dixon applied to sanctions imposed for supervised release violations. The Woodrup court rejected the argument, concluding that Dixon could be distinguished because, in that case, "the sentence imposed for Dixon's criminal contempt could only have been punishment for the conduct that gave rise to the contempt," 86 F.3d at 362, whereas in the supervised release context, the sanction is "legislatively authorized punishment for the offense of original conviction, not for the conduct giving rise to the enhancement." Id. at 363. Here, too, any sanction for Gonzalez-Ferretiz's second § 1326 violation would be a sanction for breach of trust, and so part of the original sentence for the original offense.

The same applies to the other contempt cases Gonzalez-Ferretiz cites. Gompers v. Buck's Stove & Range Co., 221 U.S. 418 (1911), and Gompers v. United States, 233 U.S. 604 (1914), are inapplicable here for the reasons just given. Both cases

deal with the protections that must be extended to defendants in contempt proceedings; but both are rendered irrelevant to present purposes by the settled doctrinal point that sanctions for violations of supervised release are not treated as additional punishments over and above the original sentence. The same is true of the final contempt case Gonzalez-Ferretiz cites, Int'l Union, United Mine Workers of America v. Bagwell, 512 U.S. 821 (1994). Bagwell is not applicable to this case for the reasons just given: In a criminal contempt action, the defendant is at risk of being punished for the contempt itself. In a supervised release violation proceeding such as this one, however, the defendant is not being punished for the underlying action that constitutes a violation, even if that action was a criminal offense. Rather, the defendant continues to serve the term of supervised release that was part of the original punishment for the original crime.

Gonzalez-Ferretiz next puts forward the proposition that a court violates the Double Jeopardy Clause if it imposes a new or enhanced sentence after a defendant has fully served the originally-imposed sentence. See Ex Parte Lange, 85 U.S. 163 (1873). But as the government correctly responds, and as is explained above, a revocation of supervised release is not the imposition of an additional punishment after a completed sentence. Rather, sanctions for supervised release violations

8

are imposed as part of the original sentence. The sentence this Court originally imposed on Gonzalez-Ferretiz included two elements: a term of imprisonment and a term of supervised release. That term of supervised release itself included conditions that could be triggered by violations of the terms of the supervised release. A sanction for the supervised release violation is thus neither a reopening nor a modification of the original sentence but is instead part of the sentence that was originally handed down.

Gonzalez-Ferretiz next cites an out-of-circuit case for the proposition that a court cannot "disturb" a defendant's terms of incarceration, fines, and restitution after the defendant has already completed his term of incarceration. United States v. Daddino, 5 F.3d 262, 265 (7th Cir. 1993). But in Daddino the sentencing court modified the actual terms of the original sentence and replaced it with a new sentence. Thus, Dadino does not apply here. The other case cited by Gonzalez-Ferretiz is likewise inapposite. United States v. Silvers, 90 F.3d 95 (4th Cir. 1996), holds that the government cannot appeal to increase a sentence once the original sentence has been served. It does not speak to the supervised release revocation context, in which the defendant has not fully served the original sentence.

Next, Gonzalez-Ferretiz argues that the government does not avoid double jeopardy by warning defendants of the possibility

of reimprisonment following supervised release violations. Drawing on Fourth Amendment case law, Gonzalez-Ferretiz makes the reasonable point that where there *is* a constitutional violation, the government cannot get around the problem simply by warning defendants that their rights will be violated, thereby adjusting their expectations. See, e.g., Smith v. Maryland, 442 U.S. 735, 740 n.5 ("[W]here an individual's subjective expectations had been 'conditioned' by influences alien to well-recognized Fourth Amendment freedoms, those subjective expectations obviously could play no meaningful role in ascertaining what the scope of Fourth Amendment protection was."). Gonzalez-Ferretiz is correct insofar as he claims that the government could not render a *prima facie* violation of the Double Jeopardy Clause benign merely by warning a defendant to expect it. But because it is well-established that sanctions for supervised release violations do not implicate double jeopardy, this argument has no application here.

Finally, Gonzalez-Ferretiz argues that differences between supervised release and probation and parole means that case law affirming the permissibility of the latter does not entail the permissibility of the former. Gonzalez-Ferretiz is correct to argue that there are differences between probation, parole, and supervised release. But, in the absence of an argument that

establishes the constitutional infirmity of supervised release revocation, this point does not in itself help his case.

In short, Gonzalez-Ferretiz points to no authority in which a court has found that post-revocation imprisonment violates the Double Jeopardy Clause of the Fifth Amendment. Earlier case law and the Supreme Court's recent decision in Haymond both lead to the conclusion that sanctions for the violation of terms of supervised release do not call the Double Jeopardy Clause into operation.

## II. The Motion to Set Aside Chapter 7 of the U.S. Sentencing Guidelines as Ultra Vires and Void (ECF No. 69)

Gonzalez-Ferretiz next asks the Court to declare Chapter Seven of the Federal Sentencing Guidelines ultra vires and therefore void.  The argument essentially progresses in three steps. First, Gonzalez-Ferretiz notes that 28 U.S.C. § 994(a)(3) directs the Sentencing Commission to promulgate guidelines for supervised release revocation sanctions "consistent with all pertinent provisions of any Federal Statute." Next, he observes that 18 U.S.C. § 3583(e) requires that revocation sanctions be based on the factors in §§ 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), (a)(7). Conspicuously missing from this list is § (a)(2)(A), which includes the factors of just punishment, seriousness of the offense, and promoting respect for the rule of law. It follows, then, that

the Sentencing Commission may not direct courts to consider §
(a)(2)(A) in assigning revocation sanctions. But, Gonzalez-
Ferretiz argues, this is just what the Commission has done,
because the Sentencing Guidelines endorse a "breach of trust" as
a sentencing factor; and that is not one of the enumerated
factors that courts are to consider. Therefore, concludes
Gonzalez-Ferretiz, this renders the Guidelines void because it
"bring[s] back punishment [i.e., just punishment] through the
back door." ECF No. 69 at 5.

This argument fails in several ways. At the outset,
Gonzalez-Ferretiz is incorrect when he asserts that the
Guidelines endorse the use of just punishment in supervised
release revocation decisions. His argument conflates the reason
for punishing something with the factors considered in assigning
the punishment. What the Guidelines say is that, in construing a
violation of a term of supervised release a "breach of trust,"
the Guidelines "intended to sanction the violator for failing to
abide by the conditions of the court-ordered supervision." But
the Guidelines add that "imposition of an appropriate punishment
for any new criminal conduct" is disavowed as a "primary goal"
of revocation sentences. U.S. Sentencing Guidelines Manual  Ch.
7, Pt. A § 3(b) (U.S. Sentencing Comm'n 2018) ["U.S.S.G."].

Thus, the nature of the release-violating conduct informs
the measurement of the "extent of the breach of trust," but is

12

not itself the object of punishment. Id. Gonzalez-Ferretiz
argues that this illicitly smuggles in one of the unenumerated
factors--just punishment--which the authorizing statute forbade.
But what the statue actually directs courts to exclude from
consideration is the nature of the original criminal offense.
Thus, it is not the case, as Gonzalez-Ferretiz claims, that the
Guidelines endorse the use of "breach of trust" as a sentencing
factor in violation of § 994(a)(3) and § 3583(e). Nor is it the
case, as Gonzalez-Ferretiz claims, that "breach of trust," as
used in the Guidelines, is a paraphrase for the disallowed
§ 3553(a)(2)(A) factor of just punishment. This is clear upon a
close examination of the statutes and Guidelines.

There are three things a court could conceivably be
punishing when it sanctions a supervised release violation. The
first is the predicate offense--the offense for which the
defendant has been convicted and in connection with which he is
serving a term of supervised release. The second is the offense
the commission of which constitutes a violation of the terms of
supervised release. The third is the "breach of trust" theory
that Chapter Seven of the Sentencing Guidelines endorses, which
punishes the violation qua violation but not qua underlying
action that constitutes a violation.

The first approach is precluded by § 3583, which excludes
from consideration the just punishment for the predicate

criminal offense.[1] The second approach is ruled out by the Guidelines, which explicitly state that they avoided the approach to supervised release violations that imposed a punishment for the actions that constituted the violation. U.S.S.G. Ch. 7, Pt. A § 3(b). The Commission takes the third approach. In revoking a term of supervised release, the court neither punishes the offense for which the defendant was initially imprisoned nor punishes the underlying actions that constitute the violation of a term of supervised release; instead, the court imposes sanctions for a breach of trust. Thus, contrary to Gonzalez-Ferretiz's claims, the Guidelines in no way endorse the consideration of factors that Congress forbade.

---

[1]   There was some lack of clarity on this point in the parties' briefs and at the hearing on these motions. An examination of the text and structure of § 3583(e) shows, however, that the "offense" in question must be the original crime for which the defendant was sentenced. Subsection (e) lists the subsections in § 3553 that a court may refer to in making the decision to: terminate a term of supervised release, § (e)(1); extend a term of release, § (e)(2); revoke a term of supervised release, § (e)(3); and order a defendant to remain homebound when not at work, § (e)(4). Unlike revocation or extension, termination of a term of supervised release does not involve the defendant's having committed a violation of the terms of supervised release. Additionally, not all violations of supervised release are criminal offenses. Thus, the "offense" mentioned in § 3553, as incorporated by reference into § 3583, cannot refer to the offense that constitutes a violation of a term of supervised release, because § 3583 intends for the provisions of § 3553 to apply equally to each of § 3583(e)(1)-(4). The offense at issue in § 3553 as applied to § 3583(e) must, then, be the original offense of conviction.

14

## III. The Motion to Limit any Further Sentence to a Maximum of Three Months (ECF No. 68)

Finally, Gonzalez-Ferretiz argues in the alternative that, if he is to be sentenced for the violation, that sentence must be limited to 3 months or less. ECF No. 68. He bases this claim on three separate arguments.

His first argument begins with the fact that the criminal offense to which he initially pled guilty, and in connection with which he was on supervised release, was illegal reentry under 8 U.S.C. § 1326(a), which carries a maximum sentence of 24 months. He then reasons that, having served a 21-month sentence, it follows that he cannot legitimately be given more than three additional months' incarceration as punishment for the original § 1326(a) violation.

His second argument is that a sentence greater than three months would lead to an overall punishment greater than that of which he was advised in his plea colloquy. Finally, he argues that the Fifth and Sixth Amendments dictate that conduct that leads to a sentence greater than the maximum under § 3583(e) requires trial by jury or proof beyond reasonable doubt. The first and third of these arguments are settled by existing case law, and the second is wrong on the record.

## A. The Argument That the 24-Month Limit Applies to Revocations of Supervised Release

Gonzalez-Ferretiz's first argument is that, if the statutory maximum sentence for a crime is a given length of time, the aggregate sentence for the crime and any reimprisonment for a supervised release violation cannot be longer than the statutory maximum for the underlying crime.

Case law on this point is decisively against Gonzalez-Ferretiz's argument. See, e.g., United States v. Seighman, 966 F.3d 237, 244-45 (3rd Cir. 2020) ("[W]e have rejected the argument that a defendant can establish an Apprendi violation by 'aggregat[ing] . . . revocation sentencing and then compar[ing] them to' a statutory maximum") (quoting United States v. Dees, 467 F.3d 847, 854 (3rd Cir. 2006)); United States v. Salazar, 987 F.3d 248, 260 (10th Cir. 2021) ("defendant failed to present[] any binding authority holding that Apprendi applies to revocation proceedings even when, as here, the initial and post[] revocation sentences add up to a term that exceeds the statutory maximum term for the crime of conviction") (internal quotations and citations omitted); United States v. Henderson, 998 F.3d 1071, 1071 ("Haymond did not overrule or undermine our prior opinion in United States v. Purvis, [] which held a term of supervised release may extend beyond the statutory maximum for the underlying substantive offense"); United States v.

16

Cenna, 448 F.3d 1279, 1280 (11th Cir. 2006) ("A defendant's supervised release term is a separate part of, or in addition to, the term of imprisonment authorized by the substantive statute applicable to the crime of conviction"); United States v. Wirth, 250 F.3d 165, 170 (2d Cir. 2001) ("It is well-settled . . . that punishment for a violation of supervised release is separate from punishment for the underlying conviction and may, when combined with the latter, exceed the statutory maximum for the underlying offense").

Gonzalez-Ferretiz's argument is further undermined by the text of § 3583(e), which states that that courts may revoke terms of supervised release "and require the defendant to serve in prison all or part of the term of supervised release authorized by statute." 18 U.S.C. § 3583(e). This clearly indicates that a post-revocation term of imprisonment is still properly part of the term of supervised release and is not aggregated with the earlier period of imprisonment. It also undermines Gonzalez-Ferretiz's claim that his post-revocation sentence would in some way capped by the statutory limit of two years' imprisonment for the original crime. 8 U.S.C. § 1326(a)(2). Because a post-revocation term of imprisonment is counted as part of the term of supervised release, it bears no direct relation to the maximum term of imprisonment set by the relevant criminal statute. The case law that Gonzalez-Ferretiz

17

discusses on this issue does not address--much less disturb--
this central point.

Gonzalez-Ferretiz devotes substantial discussion to the
unpublished Fourth Circuit case United States v. McCabe, 23 F.3d
404 (4th Cir. 1995). But as Gonzalez-Ferretiz himself
acknowledges, McCabe involved questions arising under the
Assimilated Crimes Act and the jurisdiction of magistrate
judges. Its resolution, accordingly, turned on legal issues
that bear no relation to the questions in this case. See id. at
*3 ("Without deciding the larger question of whether the
statutory maximum may ever be exceeded in the context of
revocation of supervised release, we are of the opinion that the
ACA limited the court's authority in this case . . . . ).

Likewise, United States v. Harris, 878 F.3d 111 (4th Cir.
2019), and United States v. Winfield, 665 F.3d 107 (4th Cir.
2012), are cited for propositions that do not actually advance
Gonzalez-Ferretiz's argument. Harris merely affirms the
principle from Johnson v. United States that, "[u]nlike
termination, revocation does not end the term of supervised
release; instead, the term of supervised release continues on
past revocation." Harris, 878 F.4d at 115; see also Johnson v.
United States, 529 U.S. 694, 705-06 (2000). Winfield, likewise,
addresses a district judge's continuing jurisdiction over a
defendant after revocation of a term of supervised release, but

does not offer any support to Gonzalez-Ferretiz's contention that the maximum term of imprisonment under a criminal statute also serves as a cap on the maximum aggregate term of post-revocation imprisonment.

In short, in the absence of any supporting case law or statutory text, Gonzalez-Ferretiz's argument on this point does not succeed.

## B. The Argument that the Plea Colloquy Does Not Allow More than 24 Months' Incarceration

Gonzalez-Ferretiz next argues that, under Fourth Circuit law, "defendants should be advised of the possibility that a revocation of supervised release could result in a total sentence above the statutory maximum." ECF No. 68 at 9. Gonzalez-Ferretiz cites to United States v. Good, 25 F.3d 218, 220 (4th Cir. 1994), which extended earlier case law to hold that at a plea colloquy a defendant had to be advised of the way in which supervised release might alter the maximum possible term of imprisonment. Gonzalez-Ferretiz argue that he was not properly advised on this matter at the plea colloquy.

This argument does not even get off the ground because the plea colloquy did, in fact, inform Gonzalez-Ferretiz of the nature of supervised release by incorporating by reference the content of the Plea Agreement. ECF No. 28 ("The defendant

19

understands that this supervised release term is in addition to any prison term the defendant may receive, and that a violation of a term of supervised release could result in defendant being returned to prison for the full term of supervised release").

## C. The Argument that the Fifth and Sixth Amendments Require Proof Beyond Reasonable Doubt for the Predicate Fact

Finally, Gonzalez-Ferretiz makes the constitutional argument that "[a]ny fact other than a prior conviction which raises the maximum exposure to imprisonment must be found by a jury beyond a reasonable doubt under the Fifth and Sixth Amendments." ECF No. 68 at 10. He then invokes case law on the doctrine of constitutional avoidance to suggest that the statutory language ought not to be read as permitting a court to impose sanctions for a supervised release violation that, aggregated with the original sentence, exceeds the statutory maximum for the underlying offense.

As the government notes, § 3583(e) itself is explicit that a violation of supervised release leads to the defendant "serv[ing] in prison all or part of the term of supervised release authorized by the statute for the offense" (emphasis added). It follows that, according to the statute, the sanction for a supervised release violation is part of the original sentence for the original offense, and not an additional or

20

revised punishment. As the government also points out, the only mention of the underlying offense in the statute comes in the context of tying the maximum penalty for a revocation to the class of the underlying offense.

The lone supporting voice that Gonzalez-Ferretiz finds is the dissent in United States v. Henderson, which is based on the premise that "the judge's constitutional authority to sentence a supervisee ultimately stems from the original jury conviction or informed guilty plea." United States v. Henderson, 998 F.3d 1071, 1078 (9th Cir. 2021) (Rakoff, J., dissenting). But, even if the dissent in Henderson could be persuasive in some cases, it is not relevant here even by its own terms. The violation for which Gonzalez-Ferretiz faces sanctions is a criminal conviction in which he already had the opportunity to plead his case to a jury and in which the government had the burden of proving his guilt beyond a reasonable doubt. As Judge Rakoff's dissent itself acknowledges,

> Apprendi has an exception: when imposing sentences, courts may consider the fact of a prior conviction without requiring proof to a jury beyond a reasonable doubt because in the prior proceeding the defendant was afforded those rights. 998 F.3d at 1087 (Rakoff, J., dissenting).

Thus, even the authority on which Gonzalez-Ferretiz relies does not support his argument. As the opinion goes on to say,

> [I]f the government and the court had been content to charge and sentence Henderson solely on the basis of the violation arising from his new state court convictions, the

21

constitutional issues presented here might have been avoided. Id.

Because the supervised release violation at issue here is Gonazalez-Ferretiz's § 1326(a) conviction in the Southern District of Texas, and not a judge-found fact under the preponderance standard, the constitutional issues that Gonzalez-Ferretiz describes are not implicated.


### CONCLUSION

The arguments in Gonzalez-Ferretiz's motions do not hold up against the weight of countervailing case law and the meaning of the relevant statutes and Guidelines. Accordingly, all three motions will be denied.

It is so ORDERED.

_____ /s/

Robert E. Payne
Senior United States District Judge


Richmond, Virginia
Date: September 28, 2021

22